*268 OPINION OP THE COURT
Maurice Harbater, J.
This is a holdover summary proceeding brought against the respondent residing in a 45-family multiple dwelling complex for violating a substantial obligation of her tenancy by harboring a dog.
What makes this case different from other reported “dog cases” is that the tenant herein alleges the affirmative defense of retaliatory eviction (Real Property Law, § 223-b).
In 1980, the tenant herein withheld rent for January, February and March on the grounds that the landlord did not keep to his promises of December 26 and that there were additional violations. An inspection was ordered and this proceeding came before me on March 25, 1980.
This court found from the computer terminal (CRT) that there existed 56 pending violations against this complex, of which there were one immediately hazardous violation and 23 hazardous violations. In addition to the above, an inspection, conducted only five days before, reported 16 violations in this tenant’s apartment alone, 3 being classified by the Office of Code Enforcement as hazardous.
After the pretrial conference of March 25, the parties consented to a court order staying the proceedings under section 755 of the Real Property Actions and Proceedings Law. The tenant made a timely deposit of the rent and has since been making monthly deposits with the clerk of the court. Six months’ rent is now on deposit and the landlord has not yet moved to vacate the stay order on the grounds that it has cured the conditions or removed the violations!
Six days after the nonpayment proceeding was stayed, the landlord prepared a 10 days’ notice to cure as “The tenant harbors a dog in the premises without the written consent of the landlord of paragraph ‘3’ of the tenant’s lease.” It was served on April 10, 1980.
On April 29,1980 the petitioner served upon the respondent a 30 days’ notice terminating her tenancy as of May 31, 1980. Subsequently, the petitioner brought this holdover summary proceeding and on June 17, 1980, after an *269 unsuccessful pretrial conference, this matter went to trial. The landlord was represented by counsel — the tenant appeared pro se.
The lease agreement provides, “3. Tenant shall not expose any sign, advertisement, illumination or projection in or out of the windows or exterior of the building except such as shall be approved and permitted in writing by Landlord and Tenant shall use only such shades in the window of said apartment as are approved by Landlord, nor shall Tenant keep in the premises any dogs or animals without the written consent of Landlord.” (Emphasis added.) This court seriously frowns on such a “no-pet clause” appearing in a paragraph of a lease that is completely unrelated to the subject matter.
Section 223-b (subd 1, pars a, b) of the Real Property Law provides “No landlord * * * shall serve a notice to quit upon any tenant or commence * * * summary proceeding to recover possession of real property in retaliation for: a. A good faith complaint * * * to a governmental authority of the landlord’s alleged violation of any health or safety law, regulation, code” or “b. Actions taken in good faith by * * * the tenant to secure or enforce any rights” under section 235-b of the Real Property Law, which is the warranty of habitability.
Although section 223-b of the Real Property Law is a fairly new statute (eff Sept. 1, 1979), the concept of retaliatory eviction had been previously recognized by some of our courts, which allowed it to be interposed as an equitable defense under section 743 of the Real Property Actions and Proceedings Law in summary proceedings. (Markese v Cooper, 70 Misc 2d 478.) Enforcement of housing codes depends in large part upon complaints by residents of substandard dwelling. If tenants can be evicted for reporting violations, housing code enforcement would be effectively stymied. (See article Statute of Retaliatory Eviction in Effect by Gary Muldoon, NYLJ, Sept. 5, 1979, p 1, col 2.)
A tenant who has violated an obligation of her lease by bringing a dog into her apartment should not be muzzled, *270 leashed and restrained from reporting hazardous housing conditions under the terrible threat of eviction!
The court finds that the tenant did make such good faith complaints to the governmental authorities and did take action to enforce and secure her rights under the warranty of habitability.
Whether there is a presumption that the landlord acted in retaliation, the statute further states: “a rebuttable presumption that the landlord is acting in retaliation shall be created if the tenant establishes that the landlord served a notice to quit, or instituted an action or proceeding to recover possession * * * within six months after” tenant made a good faith complaint to a governmental agency “or an inspection was made, an order was entered, or other action was taken as a result of a complaint” (Real Property Law, § 223-b, subd 5).
At first blush it would appear that the tenant herein would be clearly entitled to the presumption that the landlord’s actions were retaliatory. However, on closer examination, she is not so entitled as “the presumption shall not apply in an action or proceeding based on the violation by the tenant of the terms and conditions of the lease” (Real Property Law, § 223-b, subd 5, par c).
Here, the tenant did technically violate the lease clause prohibiting harboring a dog without the written consent of the landlord.
The court finds that the landlord acted in retaliation for the lawful actions taken by the tenant and further finds that the landlord would not otherwise have commenced this proceeding to evict tenant for harboring her dog. (Real Property Law, § 223-b, subd 4.) Notwithstanding that there is no statutory presumption, the tenant has proven landlord’s retaliation against her by a fair preponderance of the credible evidence.
Final judgment of possession is granted in favor of the tenant dismissing the landlord’s petition on the merits.