[844 NE2d 756, 811 NYS2d 302]

Country-Wide Insurance Company, Appellant, v National Railroad Passenger Corporation, Also Known as Amtrak, Respondent. Hui Haw So et al., Plaintiffs.

Argued January 4, 2006; decided February 14, 2006

## POINTS OF COUNSEL

*Jaffe & Nohavicka,* New York City (*Joseph D. Nohavicka* of counsel), for appellant. There has been no ambiguity in the decisions from this Court regarding the burden shifting framework of Vehicle and Traffic Law § 388 when presented with the uncontradicted testimony of an owner and a driver: even where the owner and driver testify without contradiction that the driver had no permission or was out of the scope of authority, the case should still go to the trier of fact. (*Murdza v Zimmerman,* 99 NY2d 375; *Morris v Snappy Car Rental,* 84 NY2d 21; *Tikhonova v Ford Motor Co.,* 4 NY3d 621; *Continental Auto Lease Corp. v Campbell,* 19 NY2d 350; *Mandelbaum v United States,* 251 F2d 748; *Thompson v Bulson,* 4 Misc 3d 129[A]; *Matter of Allstate Indem. Co. v Nelson,* 285 AD2d 545; *Ferris v Sterling,* 214 NY 249; *St. Andrassy v Mooney,* 262 NY 368; *Piwowarski v Cornwell,* 273 NY 226.)

*Landman Corsi Ballaine & Ford P.C.,* New York City (*William G. Ballaine* and *Rochanne Sharei* of counsel), for respondent. Settled New York law supports the decision granting summary judgment because the substantial uncontroverted evidence of no permissive use could not be reasonably disregarded by a jury. (*Mandelbaum v United States,* 251 F2d 748; *St. Andrassy v Mooney,* 262 NY 368; *Barrett v McNulty,* 32 AD2d 953, 27 NY2d 928; *Morris v Snappy Car Rental,* 84 NY2d 21; *Murdza v Zimmerman,* 99 NY2d 375; *Leotta v Plessinger,* 8 NY2d 449; *Payne v Payne,* 28 NY2d 399; *Hukey v Massachusetts Bonding & Ins. Co.,* 277 App Div 411; *New York Cent. Mut. Fire Ins. Co. v Nationwide Mut. Ins. Co.,* 307 AD2d 449; *Cooper v City of New York,* 293 AD2d 704.)

## OPINION OF THE COURT

ROSENBLATT, J.

The United States Court of Appeals for the Second Circuit has certified to us questions relating to section 388 of the Vehicle and Traffic Law. That section holds vehicle owners vicariously liable for the negligence of those whom they allow to drive their vehicles (*Tikhonova v Ford Motor Co.,* 4 NY3d 621, 623 [2005]). The certification relates to the circumstances in which, for summary judgment purposes, a driver may be said to have operated a vehicle without the owner's permission.

On February 27, 2000, Alex D. Sanchez, an Amtrak employee, was working at the company's Sunnyside Yard facility. Just before his shift began, he realized that he did not have the

Amtrak-issued radio he needed for work. Although he had no valid driver's license, Sanchez took an Amtrak pickup truck and drove home to get the radio. Driving back on the Gowanus Expressway in Brooklyn, he struck the plaintiffs' car.

Plaintiffs sued National Railroad Passenger Corporation (Amtrak) in state court.[1] Amtrak removed the case from Kings County Supreme Court to the United States District Court for the Eastern District of New York. In its motion for summary judgment, Amtrak argued that it cannot be held vicariously liable under Vehicle and Traffic Law § 388 (1) because Sanchez had neither express nor implied permission to take the pickup truck. That section reads as follows:

> "Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner" (id.).

In support of its motion, Amtrak offered the declaration of David Zwolinski, stating that he was acting assistant supervisor at the Sunnyside facility and that Sanchez took the vehicle and "drove it off the premises without advising anyone, without requesting or receiving my permission, and without obtaining the authorization of anyone at Amtrak." This unauthorized use of the vehicle, Zwolinski added, did not occur during Sanchez's shift and was not within the scope of his employment.

Amtrak also submitted internal documents supporting its claim of unauthorized use, including an incident report and a letter directing Sanchez to appear for a formal Amtrak investigation, in which he was charged with using the vehicle without authorization. In addition, Amtrak submitted its accident report stating that Sanchez's use of the truck was "non-authorized," a two-paragraph statement by Sanchez and a "Waiver of Hearing" by which he accepted discipline, which included $17,600 in restitution and docked wages. In the state-

---

**1.** Plaintiffs also sued Country-Wide Insurance Company, asserting that as the carrier for one of the plaintiffs it would be liable under the policy's underinsurance provision if Sanchez drove Amtrak's vehicle without its consent. In this posture, Country-Wide has argued that the Federal District Court should not have granted Amtrak summary judgment. Plaintiffs did not participate in the federal court proceedings nor have they appeared in this Court.

ment, Sanchez admitted taking the vehicle to retrieve his radio but did not speak to the question of permission. In the waiver, however, he accepted punishment based on charges that he took the vehicle without permission and we are prepared to construe this, as the Second Circuit evidently did, as an uncontradicted statement that he had no permission.

In opposition, Country-Wide offered no evidence of its own, and instead argued that Amtrak made no report of the event to any law enforcement agency, that Sanchez took the pickup because he needed the radio to do Amtrak work, and that Amtrak's formal investigation did not begin until weeks after the incident. Thus, according to Country-Wide, a trier of fact could reasonably conclude that the use was authorized.

In discussing section 388 of the Vehicle and Traffic Law, the District Court applied the presumption that Sanchez operated the truck with Amtrak's consent, but held that the presumption was rebutted by substantial evidence, and granted Amtrak summary judgment.[2] On appeal from the District Court judgment, the Second Circuit reviewed the pertinent case law—both its own and New York State appellate-level decisions—and expressed uncertainty as to whether, under New York law, summary judgment for the owner was warranted. The court certified the following five questions:

> "1. Under New York law, are uncontradicted statements of both the owner and the driver that the driver was operating the vehicle without the owner's permission sufficient to warrant a court in awarding summary judgment to the owner?

> "2. If the answer to question #1 is 'no,' is additional circumstantial evidence such as contemporaneous accident reports submitted by the owner sufficient to tip the balance and warrant a court in awarding summary judgment despite the interested nature of the source?

> "3. Is the uncontradicted testimony of driver and owner that the driver was operating the vehicle without permission, even if not sufficient to war-

___

2. The presumption is not contained in the statute but is part of our decisional law (see e.g. Murdza v Zimmerman, 99 NY2d 375, 380 [2003]; Leotta v Plessinger, 8 NY2d 449, 461 [1960]; Winnowski v Polito, 294 NY 159, 161 [1945]).

rant summary judgment, sufficient at a trial to overcome the statutory presumption of permissive use, thereby placing the burden on plaintiff to prove permissive use?

"4. If the answer to question #3 is 'no,' is the addition of such further evidence as contemporaneous accident reports by the owner sufficient to rebut the presumption of permissive use at trial?

"5. Does New York law allow the absence of a report of unauthorized use of a vehicle to law enforcement to count as evidence of permissive use sufficient, alone or together with other evidence, to defeat summary judgment?" (407 F3d 84, 89 [2005].)

We appreciate the Second Circuit's invitation to adjust the questions in a way that best enables us to answer them. Because we cannot answer the first question with an unvarying "yes" or "no," and the second question comes into play only if the answer to the first question is "no," we are combining the first two questions, along with the fifth, which is germane to our response to the first two.

■ We can best respond by stating that uncontradicted statements of both the owner and the driver that the driver was operating the vehicle without the owner's permission will not *necessarily* warrant a court in awarding summary judgment for the owner. In most circumstances—including the circumstances of this case—they will, but not as an absolute or invariable rule. Our decisional law reflects as much.

In *St. Andrassy v Mooney* (262 NY 368 [1933]), the owner, his wife and their chauffeur testified that the chauffeur had no consent, express or implied, to take the car and that he took it unlawfully and in defiance of his employer's commands. The Court laid down a rule that still governs the issue: "If the evidence produced to show that no permission has been given has been contradicted or, because of improbability, interest of the witnesses or other weakness, may reasonably be disregarded by the jury, its weight lies with the jury" (*id.* at 372). The Court recognized that the owner may be considered interested, but there were no grounds on which to discredit his testimony, and so the presumption of permission was overcome.[3]

---

**3.** *St. Andrassy* was decided under former section 59 of the Vehicle and Traffic Law, which, in turn, was derived from section 282-e of the Highway

Similarly, in *Barrett v McNulty* (27 NY2d 928 [1970]), there was uncontradicted evidence that the driver had no permission to operate the vehicle; he had pleaded guilty to theft of the vehicle, and, most critically, there was no competent evidence from which permission could be inferred. We held that the trial court properly dismissed the complaint against the owner at the close of the evidence.

Most recently, in *Manning v Brown* (91 NY2d 116 [1997]), the driver and the owners stated in their depositions that the driver neither asked for nor received permission from the owners to drive the car. The driver pleaded guilty to car theft, and we ruled that the trial court properly granted summary judgment to the owners. The owners, we held, produced sufficient evidence to rebut the presumption, leaving no triable issue of fact as to the question of consent.

These cases have a common theme: both the owner and the driver disclaimed consent, and the plaintiff produced no competent evidence from which consent could be inferred. As a corollary, however, disavowals by both the owner and the driver, without more, should not automatically result in summary judgment for the owner. Where the disavowals are arguably suspect, as where there is evidence suggesting implausibility, collusion or implied permission, the issue of consent should go to a jury. Two cases illustrate this point.

In *Winnowski v Polito* (294 NY 159 [1945]), the owner parked his car on a busy thoroughfare, leaving the key in the ignition switch and his 14-year-old son in the car. A police officer ordered the youth to move the car, notwithstanding his protest that he had neither the permission nor the competence to drive it. The father confirmed that he expressly forbade his son to drive the car at any time. We reversed the Appellate Division's dismissal of the complaint against the owner, holding that the trial court was within its prerogative as the trier of facts in concluding that the son had implied permission, based on the reasonable expectation that an emergency or other necessity might arise, that would require the car to be moved (*see also Piwowarski v Cornwell*, 273 NY 226 [1937]).

*Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co.* (35 NY2d 260 [1974] [*MVAIC*]) is another instance in which

Law (L 1924, ch 534), the original statute by which owners were held vicariously responsible for the negligence of drivers whom they allowed to drive their vehicles.

summary judgment to the owner was not warranted though the owner had undeniably withheld its express consent to the driver. The owner, a rental car company, leased the car to a customer who agreed that he would not let anyone else drive it without the company's permission. In spite of the agreement, the customer allowed a third person to drive the car and an accident ensued. We held that, despite the restrictions in the rental contract, the rental company gave "constructive consent" to the third person based on the likelihood that customers would allow others to drive rental cars. While *MVAIC* was based on public policy grounds, it illustrates that summary judgment for the owner will not necessarily be granted even though both the owner and driver acknowledge that the owner did not give the driver consent to operate the car (and, indeed, expressly prohibited operation).

In *Mandelbaum v United States* (251 F2d 748 [2d Cir 1958]), the Second Circuit recognized that there are New York cases indicating that

> "even where the owner and driver testify without
> contradiction as part of the defendant's case that
> the driver had no permission or was out of the scope
> of employment, the case should still go to the trier
> of fact and if that evidence of interested witnesses is
> disbelieved the presumption has not been overcome"
> (*id.* at 751).

In certifying the present case to us, however, the Second Circuit questioned whether *Mandelbaum* is an accurate reflection of New York law. We conclude that it is, insofar as it recognizes that summary judgment for the owner will not *inexorably* follow whenever the owner and driver disavow consent. *Mandelbaum* should not be understood, however, as suggesting or mandating that summary judgment must be denied even where the absence of consent is emphatic and unimpeachable. In short, whether summary judgment is warranted depends on the strength and plausibility of the disavowals, and whether they leave room for doubts that are best left for the jury.

Thus the answer to a combination of questions 1 and 2—will uncontradicted statements by the owner and driver that the driver was without permission, bolstered by such additional evidence as accident reports, warrant a court in awarding summary judgment to the owner?—is, as a general matter: "Usually, but not always." On the specific facts of this case, they would.

■ Here, the disavowals were as firm and unassailable as they were in *St. Andrassy* and *Manning* and were reinforced by Amtrak's contemporaneous accident reports. Sanchez accepted a punishment based on a written allegation that he took the truck without authority. In view of the evidence that overcame the presumption of consent, with nothing on the other side of the scale, summary judgment for Amtrak is consistent with New York law.[4]

In our Court, Country-Wide argued, in addition to its other points, that Amtrak failed to report the unauthorized use of the vehicle to a law enforcement agency. While, in answer to certified question 5, New York law allows that failure to be considered, it should not alone defeat a grant of summary judgment to the owner, where, as here, the proof against permission is strong and uncontested, with nothing (apart from speculation) to cast doubt on its plausibility.

■ We note that the third and fourth questions relate to proof at trial. We are prohibited by our rules from answering those questions because our answers would not be determinative (*see* Ct App Rules Prac [22 NYCRR] § 500.27 [a]; NY Const, art VI, § 3 [b] [9]). Moreover, in light of our response to questions 1, 2 and 5, questions 3 and 4 become academic.

Accordingly, the certified questions should be answered in accordance with this opinion.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO and R.S. SMITH concur; Judge READ taking no part.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.

---

4. We are mindful that the final determination of this appeal is of course the role of the Second Circuit, not of this Court (*Rooney v Tyson*, 91 NY2d 685, 690 [1998]; *Engel v CBS, Inc.*, 93 NY2d 195, 207 [1999]), and that it is not our task to apply the Federal Rules of Civil Procedure. The first certified question, however, does not admit of a straightforward "yes" or "no" answer, and we therefore think it is necessary, in order to provide the certifying court with the guidance it seeks, to state whether we believe that the District Court's decision was consistent with New York law.